FILED
2021 Feb-10 PM 01:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | |
|---|---|
| **LIBERTY INSURANCE CORPORATION** | ) ) ) |
| **Plaintiff,** | ) ) **CIVIL ACTION NO:** |
| **v.** | ) **1:19-CV-01397-CLM** ) ) |
| **ARNOLD O. SHAW, et al.,** | ) ) |
| **Defendants.** | ) |

### MEMORANDUM OPINION

Plaintiff Liberty Insurance Corporation ("Liberty") asks the court to distribute $94,247.34 in insurance policy proceeds. Three candidates have emerged. Defendant Arnold Shaw ("Shaw") believes he is entitled to the entire sum. Defendants Caliber Home Loans, Inc. ("Caliber") and U.S. Bank Trust, N.A. ("U.S. Bank") (collectively "U.S. Bank") argue that they are collectively entitled to $43,295.11, with Shaw to receive the remaining $50,952.23. For the reasons stated within, Shaw is entitled to all the proceeds. So the court will **GRANT** Shaw's motion for summary judgment and **DENY** U.S. Bank's motion for summary judgment.

### STATEMENT OF THE FACTS

This case involves a mortgage, a fire, and a foreclosure. The parties mostly agree on the facts.

Shaw had a home in Sylacauga. Shaw executed a mortgage in favor of MBNA America, N.A. to secure debt on the home. Some months later, MBNA assigned the mortgage to HSBC.

Liberty issued an insurance policy that covered Shaw's home. After Liberty issued the policy, Shaw's property caught fire, causing a total loss. Shaw notified Liberty and HSBC of the fire and submitted a claim to Liberty, who issued a check of $94,247.34 jointly to Shaw and HSBC. Neither Shaw or HSBC cashed the check, so Liberty re-issued it.

After the fire, Caliber began servicing Shaw's mortgage, and HSBC assigned the mortgage to U.S. Bank. Caliber sent a third party to inspect Shaw's property. The report from this inspection said the property was in "poor" condition, confirmed the fire damage with photographs, and described the home as a "candidate for demolition." Caliber sent a second group to inspect; and that group came to similar conclusions, sent Caliber more photographs, and quoted Caliber an as-is price of $12,000, with a quick sale price of $8,000.

Throughout this time, and beginning before the fire, Shaw fell behind on his loan payments. So U.S. Bank foreclosed on the known-to-be damaged property. Shaw owed $50,795.11 on the loan at the time of the foreclosure. U.S. Bank bought the property at the foreclosure sale using a credit bid worth the same amount as what Shaw owed on the loan: $50,795.11. U.S. Bank later sold the property for $7,500.

During all that time, the insurance check went uncashed. So Liberty filed this Complaint for Interpleader, asking this court to determine who is entitled to the unclaimed insurance proceeds.

## STANDARD OF REVIEW

Summary judgment is appropriate only when the moving party shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is material if it is one that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In turn, to avoid summary judgment, the nonmoving party must go beyond mere allegations to offer specific facts creating a genuine issue for trial. *Id.* at 324. Moreover, all evidence must be viewed and inferences drawn in the light most favorable to the nonmoving party. *Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1149 (11th Cir.2005). When no genuine issue of material fact exists, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## ANALYSIS

U.S. Bank and Shaw agree that Shaw should receive some of the insurance proceeds. The question is: how much?

Shaw argues that he gets it all. U.S. Bank, though, believes it should recoup the $50,795.11 it spent at the foreclosure sale to buy the property, minus the $7,500 it made by selling the property to a third party. In other words: $43,295.11.

**A. Legal Entitlement**

Only two documents might entitle U.S. Bank to some of the proceeds: (a) the insurance policy and (b) the mortgage. But U.S. Bank concedes that it has no rights under the insurance policy because, under Alabama law (which governs here), U.S. Bank's use of a full credit bid to purchase Shaw's property eliminated the debt Shaw owed to U.S. Bank, thereby triggering the policy's so-called New York Standard Mortgage clause. *Nationwide Mut. Fire Ins. Co. v. Wilborn*, 279 So.2d 460, 465 (Ala. 1973) (holding that a mortgagee may not recover insurance proceeds under a policy containing a New York Standard Mortgage clause when the mortgage debt has already been satisfied). Because U.S. Bank has no right under the insurance policy, U.S. Bank admits that the policy entitles Shaw to the entire amount.

U.S. Bank instead argues that Shaw assigned a portion of his rights under the insurance policy to U.S. Bank in Paragraph 5 of the mortgage:

> If under paragraph 16 the Property is acquired by Lender, Borrower's rights to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

Doc. 32-3, p. 2. According to U.S. Bank, Paragraph 5 dictates that, once U.S. Bank bought the property using the Paragraph 16 foreclosure clause, Shaw relinquished his right to $50,795.11 of the insurance proceeds—*i.e.,* the "extent of the sums secured by this Security Instrument immediately prior to the acquisition." U.S. Bank is willing to give Shaw a $7,500 credit for the monies U.S. Bank made by later selling the property, even though Paragraph 5 doesn't require any credit.

In other words, U.S. Bank argues that, when Shaw signed the mortgage, he signed away application of Alabama's full credit bid (aka foreclosure after loss) rule, thereby allowing U.S. Bank to exploit full credit bidding *and* recoup its full credit bid by dipping into Shaw's insurance policy. The parties admit that Alabama courts have yet to decide whether a mortgagor can sign away application of the full credit bid rule. But the courts that have decided the issue say 'no'. *See Rodriquez v. First Union Nat'l Bank*, 810 N.E. 2d 1282 (Mass. App. Ct. 2004) (finding that the mortgagee's full credit bid extinguished any assignment of rights); *Emmons v. Lake States Ins. Co.*, 484 N.W. 2d 712, 714 (Mich. Ct. App. 1992) (finding that a full credit purchase extinguished the mortgagor's debt and thus a similar assignment clause "secured nothing"). The Third Restatement of Property (Mortgages) says the same thing:

> [I]f the mortgagee chooses to foreclose and the foreclosure bid is at least equal to the mortgage obligation, that obligation is fully satisfied and the mortgagee shall have no additional recourse against the insurance carrier. . . . [T]his result … is not altered by the fact that the

> mortgage contains language that, in the event of foreclosure, the mortgagor's rights in casualty insurance policies pass to the foreclosure sale purchaser.

*Id.* § 4.8.

Thankfully, this federal court needn't speculate whether Alabama state courts would adopt the same rule because it is dictated by the plain language of the mortgage. Again, Paragraph 5 assigned Shaw's rights to insurance proceeds *after* U.S. Bank bought the property at foreclosure under Paragraph 16. Paragraph 16 allowed U.S. Bank to foreclose on Shaw's property and buy it at the foreclosure sale. Paragraph 16 then dictated that the proceeds of the sale "be applied in the following order: (a) to all expenses of the sale, including but not limited to, reasonable attorney's fees; (b) ***to all sums secured by the Security Instrument***, and (c) any excess to the person or persons legally entitled to it." Doc. 32-3 at 5 (emphasis added). As U.S. Bank acknowledge at oral argument, its payment of $50,795.11 covered the expenses and "all sums secured by the Security Instrument." *Id.*

U.S. Bank's receipt of all sums secured triggered Paragraph 18: "Upon payment of ***all sums secured by this Security Instrument***, Lender shall release this Security Instrument without charge to Borrower." *Id.* (emphasis added). Once U.S. Bank received payment of "all sums secured by the Security Instrument," the Security Instrument (*i.e.*, the mortgage) became ineffective. That means Shaw's post-sale assignment of rights to insurance proceeds also became ineffective, as the

plain language of the mortgage says that "[t]his security instrument secures to Lender: … (c) the performance of Borrower's covenants and agreements[.]" *Id.* at 2. In short, once there was no debt, there was no mortgage. And if there is no mortgage, there is no assignment of rights to insurance proceeds.

This plain reading of the mortgage mirrors Alabama common law. As the Alabama Supreme Court has often said, "[i]f there is no debt there is no mortgage." *Cottingham v. Citizens Bank*, 859 So.2d 414, 420 (Ala. 2003) (citing *Jarrett v. Hagedorn*, 185 So. 2d 401, 402 (1938)). That is, once the debt disappears—as through a full credit bid in a foreclosure sale—the mortgage no longer binds the parties. Interpreting nearly the same language as contained in Paragraph 18, the Alabama Supreme Court has held that "the rule, well-nigh universal, is that, when a debt secured by a mortgage has been paid, the mortgage becomes functus officio, and it cannot be made to stand as security for a new or different debt between the parties." *Cottingham*, 859 So.2d at 420 (citing *Hammock v. Oakley*, 154 So. 906, 908 (1934). The Eleventh Circuit has also endorsed this view, stating that when "the foreclosure and sale of the property [bring] the full amount of the debt, the note and mortgage would be extinguished." *Allstate Ins. Co. v. James*, 779 F.2d 1536, 1539 (11th Cir. 1986).

In sum, both the mortgage's plain language and Alabama law say that U.S. Bank cannot claim Shaw's rights under Paragraph 5 because the mortgage is null.

## B. Equitable Entitlement

U.S. Bank also argues that, if Shaw is *legally* entitled to the entire amount of the insurance proceeds, equity demands that U.S. Bank receive a portion because Shaw was delinquent in his mortgage payments. In fact, Shaw didn't make a single payment to Caliber or U.S. Bank once they obtained his mortgage.

The court rejects this equitable argument for two reasons. First and foremost, Alabama law doesn't allow equity to trump the plain language of a mortgage or insurance policy. In fact, that was U.S. Bank's position in the briefs: "'Under Alabama law, this Court, when interpreting a contract, must follow the plain language of the contract.' This is all that Caliber and U.S. Bank Trust are requesting from the Court: follow the plain language of Paragraph 5." Doc. 35 at 4 (quoting *Pub. Bldg. Auth. Of City of Huntsville v. St. Paul Fire & Marine Ins. Co.*, 80 So.3d 171, 180 (Ala. 2010)). When the court confronted U.S. Bank with Paragraph 18 at oral argument, U.S. Bank conceded that it could cite no Alabama case that would allow this court to ignore Paragraph 18's plain language and rule in equity.

Second, the court would not find that the equities tip in favor of U.S. Bank even if the court could rule in equity. U.S. Bank received written reports and photographs from two inspections of Shaw's burned-out property that put U.S. Bank on notice that the property was nearly worthless. And the court says "nearly" because

one inspector told Caliber that it might make $8,000 in a quick sale—a number very close to the $7,500 that the bank ultimately received.

Yet, U.S. Bank still decided to put a full credit bid of $50,795.11 to purchase the property. Why? The court can only speculate. The least charitable view would be that U.S. Bank offered the bid to discourage other well-meaning bidders from purchasing the property, knowing full well that no one would pay over $50,000 for the charred remains of a house. U.S. Bank could then turn around and sell the property for whatever it was worth (which it did), pocket that amount, and then go after the insurance proceeds under Paragraph 5 of the mortgage—which the bank believed (hoped) was operative.

The more charitable view is that U.S. Bank simply erred. Despite a century's worth of precedent about full credit bidding, and a growing amount of third-party warnings against the practice—including one from the American Association of Private Lenders—U.S. Bank decided to place a full credit bid on property worth nowhere near that amount. *See* Edward Brown, *Best Practices for Credit Bidding at Foreclosure*, AMERICAN ASSOCIATION OF PRIVATE LENDERS (Aug. 19, 2019), https://aaplonline.com/best-practices-for-credit-bidding-at-foreclosure/ (advising lenders that they may have "no recourse" when seeking insurance proceeds after using a full credit bid to purchase property at a foreclosure sale). U.S. Bank thought the mortgage might offer a reprieve. It didn't. And that's not Shaw's fault.

No matter why it placed a full credit bid, U.S. Bank is not blameless. That Shaw also has unclean hands simply means that the balance of equities tips in no one's favor. Nor does it matter; the plain language controls. And it says Shaw wins.

## CONCLUSION

For the reasons stated above, Shaw's motion for summary judgment (doc. 26) is due to be **GRANTED** and U.S. Bank's motion for summary judgment (doc. 31) is due to be **DENIED**. So the court will enter a separate order granting and denying the respective motions and dismissing this case with prejudice.

**DONE** this 10th day of February, 2021.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE